RUTH GROVE and SAMUEL GROVE *vs.* BENJAMIN
H. TODD, JESSE E. TODD, VACHEL B. TODD,
CHARLES W. TODD, and others.

*Deed defectively Acknowledged—Curative Act of 1867, ch. 160—*
*Art. 23 of the Declaration of Rights—Vested Rights—Retro-*
*active Legislation—How Dower must be Released.*

On the 29th of November, 1866, T., being seized in fee of a tract of land in
F. County, executed a deed in which his wife joined to bar her dower, con-
veying the tract, in consideration of love and affection, to certain children
of his deceased illegitimate son, to whom his wife bore no blood relation.
The deed purported to have been executed and acknowledged in F. County,
before a justice of the peace for that County, but was in fact executed and
acknowledged in C. County, where T. and his wife lived, before a justice
for F. County. Such an acknowledgment was invalid by the laws of Mary-
land, but the Act of 1867, ch. 160, provided that all deeds so executed and
acknowledged since November 1st, 1864, should be as valid to all intents
and purposes as if properly acknowledged. In December, 1866, before the
passage of this Act, T. died intestate, and soon after his widow filed a bill
to have the deed declared a nullity and for assignment of dower. HELD;

1st. That as against T. and his heirs, the deed, being a good grant at common
law, and executed upon a strong moral consideration, was cured by the
statute.

2nd. That the deed being without acknowledgment, was utterly null and void
as against the wife both at law and equity; that the statute could not
impart life to it, as against her, without interfering with her vested rights
secured by the Declaration of Rights; and that therefore she was entitled to
have dower assigned her in the land conveyed.

Retroactive legislation to cure or confirm conveyances or other proceedings
defectively acknowledged or executed, is sustainable upon the ground that
it operates not upon the deed or contract, by changing it, but upon the
mode of proof only.

A wife can only be divested of her dower by proper and legal acknowledg-
ment, and a deed not so acknowledged is wholly inoperative as to her, and
is to be treated as if she had not been a party to it.

APPEAL from the Circuit Court for Frederick County, in Equity.

This appeal was taken by the complainants from a decree of the Court below dismissing their bill. The facts of the case are sufficiently stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT, MILLER and ALVEY, J.

*John J. Donaldson* and *Thomas Donaldson*, for the appellants.

[The arguments of counsel, except as to the question of the validity of the deed in controversy, are omitted.—REP.]

The deed of the 29th of November, 1866, was not executed in the manner required by law to constitute it a valid conveyance. Intending to convey title to real estate situated in Frederick County, it was executed and acknowledged in Carroll County, where the grantors resided, before a justice of the peace for Frederick County. Therefore under the Maryland statutes, no estate passed to the grantees. *Code, Art.* 24, *secs.* 1, 2, 3; *Gittings' Lessee vs. Hall,* 1 *H. & J.,* 14; *Hall vs. Gittings' Lessee,* 2 *H. & J.,* 380; *Byer vs. Etnyre & Besore,* 2 *Gill,* 150; *Cockey vs. Milne's Lessee,* 16 *Md.,* 200; *Johnston vs. Canby,* 29 *Md.,* 215, 216.

Then, immediately on the death of Benjamin Todd, the title to this land, became vested in his heirs, subject to the widow's dower. If there had been a valuable consideration there would have been in those heirs a dry legal title, and the grantees could compel a conveyance by a bill for specific performance. But this was a mere *voluntary* deed; in favor of persons too, who stood in no legal relationship to either of the grantors. Certainly there was no meritorious consideration so far as Ruth Todd was concerned.

Even where the consideration is that of love and affection
to persons of the grantor's own family, specific perform-
ance will not be decreed of a contract or conveyance
defectively executed; and imperfect deeds cannot be set
up in equity, or reformed and corrected as against a mar-
ried woman.   2 *Kent Com.*, 465-6 ; 1 *Story Eq. Jur.*, (*9th
Ed.*,) *sec.* 706*a*, *sec.* 787, *secs.* 793*b*, *d*; *Pennington, Adm'r
of Patterson vs. Gittings' Ex'r*, 2 *G. & J.*, 208, 217;
2 *Scribner on Dower*, 299 ; *Martin vs. Dwelly*, 6 *Wend.*, 9 ;
*Purcell vs. Goshorn*, 17 *Ohio*, 105.

The appellees, however, rely upon the Act of Assembly
of 1867, ch. 160, passed after the death of Benjamin Todd,
as validating the deed of the 29th of November, 1866;
and the learned Judge below decided, that such was the
effect of that Act.   That Act is unconstitutional and void
in all cases where Courts of Equity would not decree
specific performance, which could not be done under the
circumstances of the present case.

If the object of the Act was to give validity to all deeds
whatever ; among the rest, to mere voluntary deeds to
which married women were parties, then it cannot accom-
plish that object.   For that would be to divest vested
rights.   *Good vs. Zercher*, 12 *Ohio*, 364, 368 ; *Silliman vs.
Cummins*, 13 *Ohio*, 116 ; *Baugher vs. Nelson*, 9 *Gill*, 299 ;
*Regents of University of Md. vs. Williams*, 9 *G. & J.*,
408; *Thistle vs. Frostburg Coal Co.*, 10 *Md.*, 129 ; *Johns
vs. Reardon*, 11 *Md.*, 465 ; *Chesnut vs. Shane's Lessee*, 16
*Ohio*, 599 ; *Aller's Appeal*, 67 *Pa.*, 341.

*Charles W. Ross* and *William A. Fisher*, for the appel-
lees.

The Act of 1867, ch. 160, was a constitutional exercise
of power with respect to all deeds.   A law is not uncon-
stitutional merely because it divests vested rights.   *Baugher
vs. Nelson*, 9 *Gill*, 299 ; *Watson vs. Mercer*, 8 *Peters*, 88 ;
*Satterlee vs. Matthewson*, 2 *Peters*, 413-14 ; *Regents, &c. vs.
Williams*, 9 *G. & J.*, 408.

There is nothing in the Constitution of the United States, or in the Bill of Rights or Constitution of Maryland, which takes from the Legislature the power to disturb vested rights. *Baugher, et al. vs. Nelson*, 9 *Gill*, 306.

An Act of Assembly is void if at all, not because it is condemned by some positive municipal law, to which it must yield, whatever may be the equities, but void only so far as it is contrary to the "first rules of right and justice;" rules, not rigid, but moulded to meet the circumstances of each case presented. *Beach vs. Walker*, 6 *Conn.*, 197; *Underwood vs. Lilly*, 10 *S. & R.*, 101; *Goshorn vs. Purcell*, 11 *Ohio, N. S.*, 652.

The application of the Act to the deed in controversy, gratifies every rule of right and justice, it gratifies the intent of the donor, and defeats fraud and inhumanity. The Courts have expressed the same views in different language, when they say that there can be no vested right to do wrong. *Baugher, et al. vs. Nelson*, 9 *Gill*, 309; *Foster vs. Essex Bank*, 16 *Mass.*, 245; *State vs. Newark*, 3 *Dutcher*, 197; *Cooley's Cons. Limitations*, (370,) (358,) 3rd ed., margin.

Curative acts have never been considered as, in any sense an interference with vested rights. They merely cure informalities not affecting the substantial equities of parties. *Cooley*, (369) to (379;) *Regents' Case*, 9 *G. & J.*, 413; *Baugher, et al. vs. Nelson*, 9 *Gill*, 306; *Harrison vs. Harrison*, 22 *Md.*, 468; *Shonk vs. Brown*, 61 *Penna. St. Rep.*, 327; *Hollingsworth vs. McDonald*, 2 *H. & J.*, 236–7.

The whole object of an acknowledgment is to furnish *evidence*, and primarily, if not entirely, to the clerk, that he may be justified in admitting the instrument to record. The deed would have been good at the common law, without any acknowledgment, but the Legislature determined that the *proof* of its execution should be an acknowledg-

ment before a particular officer. There is no vested right to have the rules of evidence remain unchanged. *Cooley*, (367,) (368,) 3rd ed., *side paging; Gibbs vs. Gale*, 7 *Md.*, 86–7.

That the acknowledgment is to be treated merely in the nature of proof, is further apparent from the passage by the General Assembly of the Act of 1868, ch. 325. *Code, Art.* 24, *sec.* 16.

The appellants conceded that the Act of Assembly would be sufficient to validate a deed which was based upon a valuable consideration, because they say, the defective instrument is evidence of an equity in the grantee, which might be enforced by a Court of Equity, while under the deed in controversy there is no equity which could be assisted. *Preston vs. Fryer*, 38 *Md.*, 221.

There is no foundation for the distinction attempted, in the application of such Acts of Assembly, to deeds in which an equity does, and those in which it does not pass. Besides this, the Act of 1868 would give to the infants a standing in a Court of Equity, to enforce the deed, even if they had it not before; and it could be enforced against the heirs-at-law of Benjamin Todd, as well as against Benjamin Todd himself, and his wife, the complainant. We deny, however, that in this State, a Court of Equity would ever have declined to recognize an equity in the infants, under the circumstances of this case. The harsh rules of the common law with respect to illegitimate children have never prevailed in this State as in England. *Pratt vs. Flamer*, 5 *Harr. & Johns.*, 20–21.

Courts of Equity will sometimes enforce a voluntary settlement in favor of illegitimate children. *Marchioness of Annandale vs. Harris*, 2 *Peere Wm.*, 432; *Bunn vs. Winthrop*, 1 *Johns. Ch.*, 338.

The complainants could not in any event have the benefit of the objection that the title of the heirs-at-law of Benjamin Todd had become vested prior to the passage of

the Act. *Harrison vs. Harrison,* 22 *Md.,* 468; *Watson vs. Mercer,* 8 *Peters,* 88.

ALVEY, J., delivered the opinion of the Court.

There are but two questions presented by the record in this case. First, whether the defective or invalid acknowledgment of the deed of the 29th of November, 1866, by Benjamin Todd, and Ruth his wife, has been so far aided and cured by the Act of the Legislature of 1867, chapter 160, as to render the deed valid and effectual as against the wife to bar her right and claim to dower in the land attempted to be conveyed; and if such has been the effect of the Act of 1867, secondly, whether the wife Ruth was induced to sign or execute the deed under such circumstances of fraud and circumvention as will entitle her to relief from its operation.

The deed purports to convey a farm of about 1318 acres of land in Frederick county, to Benjamin H. Todd and Jesse E. Todd, children of Jesse Todd, deceased, the illegitimate son of Benjamin Todd, the grantor. The consideration expressed in the deed was the love and affection which the grantor, Benjamin Todd, bore to the grantees, whom he called his grand-children. The wife Ruth bore no blood relation whatever to these children. The deed, while it professes to have been executed and acknowledged in Frederick county, before a justice of the peace of that county, was in fact executed and acknowledged in Carroll county, where the grantor and his wife at the time resided, before a justice of the peace of Frederick county. Benjamin Todd, the grantor, died intestate in December, 1866, and his widow, one of the appellants, intermarried with Samuel Grove, the other appellant, some time in the summer of 1867. The bill is filed by the appellants to have the deed declared a nullity, and for the assignment of dower in the land attempted to be conveyed. A large mass of proof has been introduced, reflecting upon the

question of fraud, but from the view we have of the case it will become unnecessary to determine whether the allegations of fraud be fully sustained or not.

1. As to the question of the defective or invalid acknowledgment of the deed.

That the deed is wholly inoperative and void, as against the wife, without the aid of the Act of the Legislature of 1867, chapter 160, has not been denied, or in any manner controverted; but it is insisted by the appellees that the Act just referred to has effectually cured and made valid the otherwise void acknowledgment, and that the deed, by means of the curative Act, operates to extinguish all right of dower in the land mentioned.

The language of the Act relied on is certainly broad and comprehensive. It declares, "That all deeds executed and acknowledged by the grantors, since the first day of November, 1864, in the county in this State in which the grantors then resided, before any other justice of the peace of any other county in this State, duly commissioned and qualified, shall be as valid to all intents and purposes as if acknowledged in the county where the lands in whole or in part are situate, before a justice of said county, or as if acknowledged before a justice of the peace of the county in which the grantors resided." Before the passage of this Act, Benjamin Todd had died, and by that event the widow's right to dower in the lands mentioned in the deed had become vested and absolute; and she is now entitled to have that dower assigned, unless her right is barred by the deed of the 29th of November, 1866.

By the common law, a *fême covert* could not release or convey her inchoate right of dower in her husband's lands by deed, but only by fine or common recovery. In this State, however, she is enabled by statute to release her dower either by joining in the deed of her husband, or by separate deed, accompanied in either case by proper acknowledgment, as the law directs. *Code, Art.* 45,

*sec.* 11. This acknowledgment is required to be made, if within the State, either before some judge or justice for the county or city within which the real estate, or some part of it, lies, or some judge or justice for the county or city in which the grantor may be at the time of acknowledgment; and if before a justice of the peace of a county or city other than that in which the land lies, the official character of such justice is required to be certified by the clerk of the Court; and without the acknowledgment thus required, it is declared that no estate of inheritance or freehold, or any declaration or limitation of use, or any estate for above seven years, shall pass or take effect. *Code, Art.* 24, *secs.* 1, 2, 3. The acknowledgment is therefore essential to the validity of the deed, as a legal conveyance, and not only so, but it must be before the proper officer; for if made before a justice of the peace out of the county or city for which he was appointed, the acknowledgment is as inoperative and void, as if the person taking it was wholly without official character *Byer vs. Etnyre & Besore*, 2 *Gill*, 151. Whatever may be the effect and operation of the deed, without proper ackowledgment, as against the husband, it is certain that the wife could only be divested of her estate by proper and legal acknowledgment, and a deed not so acknowledged, is *wholly inoperative* as to her, and is to be treated as if she had not been a party to it. *Johns vs. Reardon*, 11 *Md.*, 465; *Steffey vs. Steffey*, 19 *Md.*, 5. The deed before us, being without acknowledgment, was utterly null and void as against the wife, *both at law and in equity*, and she was under no obligation, and could not be compelled, to rectify it, so as to give it operation and effect. *Gebb vs. Rose*, 40 *Md.*, 387 : *Drury vs. Foster*, 2 *Wall.*, 24.

Such then being the state and condition of the widow's title to dower in the lands mentioned in the deed, at the time of the passage of the Act of 1867, chapter 160, was it within the constitutional power of the Legislature; by

retroactive legislation, to give force and validity to the deed, as if properly acknowledged, and thus divest a vested estate?

That the Legislature may, in proper cases, by retroactive legislation, cure or confirm conveyances, or other proceedings, defectively acknowledged or executed, we entertain no doubt. As authority for the exercise of such power, we have long usage and many precedents. Such legislation is sustainable, because it is supposed not to operate upon the deed or contract, by changing it, but upon the mode of proof only. *Journeay vs. Gibson*, 56 *Penn. St.*, 57; *Shonk vs. Brown*, 61 *Penn. St.*, 321. And in this case we are of opinion that the Act of 1867, chapter 160, has operated to cure and make effectual the deed before us, as against the husband and his heirs. The deed was a good grant at the common law, as against the husband, and he executed it upon a strong moral consideration, apart from the fact that it was designed to carry out a long settled and determined purpose of his so to dispose of the estate. But not so as to the wife. As to her, she being without capacity to make a deed or contract, except in a particular mode, not complied with in this case, the deed by which she is now sought to be barred was no more than a blank piece of paper; and as when vested rights are spoken of by the Courts as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist without inflicting a wrong upon others. (9 *Gill*, 309.) We think the right of the appellant in this case is of that character. She has a right to insist, according to the Declaration of Rights, Art. 23, that she shall not be disseized of her freehold, liberties or privileges, or deprived of her property, otherwise than by the judgment of her peers, or by the law of the land; or, as these latter terms are defined, by due course of legal proceedings, according to those rules and forms which have been established for the protection

of private rights. 2 *Kent's Com.*, 13; *The Regents vs. Williams*, 9 *Gill & John.*, 412; *Wright vs. Wright*, 2 *Md.*, 452; *Westervelt vs. Gregg*, 12 *N. Y.*, 209; *Reese vs. City of Watertown*, 19 *Wall.*, 122. The deed being utterly void and without effect as to her estate, if she is now divested of her right of dower, it is by force of the statute and not of the deed; the statute operating through the form of the otherwise void deed to transfer the estate. To concede to the Legislature the power, by retroactive legislation, adopted without the consent of the party to be affected, to accomplish such a result, is at once to concede to it the power to divest the rights of property and trans·fer them, without the forms of law, upon any notion of right or justice that the Legislature may think proper to adopt:—a concession that can never be made in a government where the rights of property do not depend upon the mere will of the Legislature, and which professes to maintain a regular system of laws for the protection of the rights of property of its citizens.

Great reliance has been placed on several cases cited in argument, supposed to be in support of the constitutional power of the Legislature to cure and make valid deeds, such as the one now under consideration. But upon examination they will be found to be cases essentially different from the one now before us. The first of the cases cited is that of *Hollingsworth vs. McDonald*, 2 *H. & J.*, 230. There, under a deed of settlement of land which had belonged· to the wife before marriage, the estate was limited to the separate use of the wife for life, with a vested estate in fee-tail to her son, the reversion in fee to the mother, the son being by a former . husband. After the marriage, the husband and wife, together with the trustee, in whom the legal estate was vested, made a deed of bargain and sale to the son, of the fee simple estate in the land. In the acknowledgment of this deed, the word "fear" was omitted, though the deed and acknowledg-

ment were in all other respects regular and formal. The son was let into possession under the deed, and died in possession of the land, having by his will devised it to his mother. The son having died insolvent, his creditors filed a bill against his mother and her husband, treating the mother as devisee, and prayed a sale of the land for the payment of the son's debts. To this bill the husband and wife answered, *admitting* that the son died seized in fee of the land, and that he had devised the same to his mother. Whereupon a decree for sale was passed, a sale made and reported, and which was confirmed *by consent* of the husband and wife. Afterwards they filed a bill in the nature of a bill of review, wherein they alleged that they had, since the ratification of the sale, discovered that the deceased son had never been seized of the fee in the land, but the same belonged to the mother, and that the deed to the son was not so acknowledged as to pass the estate of a *féme covert*. This bill was dismissed by the Chancellor, and the case was taken to the Court of Appeals, and after it was there argued, but before decision rendered, the curative Act of 1807, chapter 52, was passed, which the Court of Appeals said operated to render the deed valid and effectual. Such was the case of *Hollingsworth vs. McDonald;* and certainly it falls far short of an authority for the support of legislative power to impart life and operative vitality to a deed, such as that before us, as to the estate of the wife.

The next case relied on is that of *Dulany & Dangerfield vs. Tilghman,* 6 *Gill & J.,* 461. That was a case where a deed of settlement was defectively executed, and the Legislature, *upon the application of the grantor,* having made another or a modified settlement, it was held, that the first deed was not affected by the subsequent general Acts of the Legislature, intended to cure deeds defectively executed. Whether the Act of the Legislature, involved in that case, was nugatory and void, as an unauthorized

usurpation of power denied to the Legislature, upon principles of common right or constitutional restriction, was a question which the Court expressly said they were relieved from considering. " The title of the property," said the Court, "by reason of the defective acknowledgment, remaining in the petitioners, it was unquestionably competent for the Legislature, *at their request*, to settle it in the mode prescribed by the Act of Assembly." There was nothing decided in that case that in any manner conflicts with what we decide in this.

The case of *Baugher vs. Nelson*, 9 *Gill*, 299, is also relied on by the appellees; but we can perceive nothing in that case that supports the position assumed by the appellees' counsel. That was the case in which it was decided that a defendant had no such vested or constitutional right in a defence of usury to an otherwise honest and proper debt, whereby he was enabled to insist upon the forfeiture of the entire debt, as should be guarded and saved from the operation of a repealing Act of the Legislature. The Court said there was no vested right, in the proper sense of the term, divested by the Act of the Legislature then under review; that the Act was no more than the proper exercise of the legislative authority over the subject of remedies; a power which can be exercised as well in relation to past as to future contracts. That when vested rights are spoken of by the Courts as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist, without violating principles of sound morality.

The case of *Harrison vs. Harrison*, 22 *Md.*, 468, also relied on, decides nothing that properly applies to this case. The marriage that was celebrated in the District of Columbia, between the uncle and his niece, was held *not* to be *ipso facto* void, but only voidable upon judgment or decree pronounced in the life-time of the parties, in a direct proceeding taken for the purpose; and the marriage Act

of 1777, chapter 12, imposing the disability, being penal in its character, it was further held to be competent to the Legislature, by the subsequent Act of 1860, chapter 271, to relieve from the disability, and to make such marriage valid. This can in no manner aid the appellees in this case.

There were cases from other States referred to, those most relied on being cases decided by the Supreme Courts of Pennsylvania and Ohio. In those two States, legislation of the character here involved appears to have been maintained to the greatest extent. In the first of these States, the principle upon which such retroactive laws are supported, as stated in one of the earlier decisions upon the subject, (*Underwood vs. Lilly*, 10 *S. & R.*, 101,) and also in one of the latest, (*Shonk vs. Brown*, 61 *Penn. St.*, 327,) is, that they shall impair no contract, nor disturb any vested right, but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted. In Ohio, according to the latest decision, (*Chesnut vs. Shane*, 16 *Ohio*, 599,) such legislation can be maintained only where it operates upon that class of deeds where enough has been done to show that a Court of Chancery ought, in each case, to pass a decree for a conveyance; that where the title in equity is such that a Court of Chancery ought to interfere and decree a good title, it is within the power of the Legislature to confirm the deed, without subjecting the parties to the expense of litigation. It is manifest that the decisions in neither of these States can be invoked as authorities for the appellees as against the appellant.

The conclusion is, from what has been said, that we are of opinion that the deed before us is not affected or rendered operative by virtue of the Act of 1867, chapter 160, as against the *féme covert*, one of the appellants, though it is cured and rendered operative as against the heirs of

Benjamin Todd, the grantor; and therefore the decree appealed from must be reversed, and the cause remanded, that a proper decree be passed by the Court below, providing for and directing the assignment of dower in the lands mentioned, as prayed by the bill.

*Decree reversed, and
cause remanded.*

(Decided 10th March, 1875.)

STEWART, J., dissented.