## BEREAN BIBLE CHAPEL, INC. *v.*
## IMOGENE PONZILLO

[No. 163, September Term, 1975.]

*Decided November 5, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and MELVIN, JJ.

*Eugene A. Alexander, III,* with whom was *Thomas E. Rosser* on the brief, for appellant.

*Barry I. Robinson* for appellee.

GILBERT, J., delivered the opinion of the Court.

This appeal calls upon us to construe Real Property Article § 4-109, the prior conveyance curative provisions of the article, with respect to its effect on subsequent creditors without notice.

The factual happenings out of which this appeal arose are uncomplicated. On May 22, 1972 Rita Helen Comi executed a mortgage in favor of Imogene Ponzillo. The mortgage was a lien upon property known as 2026, 2028 and 2030 Orleans Street in Baltimore City. A default occurred on the mortgage and a foreclosure sale resulted. Berean Bible Chapel, Inc., a Maryland religious corporation, was the successful bidder at the sale, they having bid $14,000.00. After the sale was reported by the trustee to the Circuit Court of Baltimore City and within the time allowed by that court's order nisi, the purchaser excepted to ratification of the sale. The purchaser pointed out that the mortgage from Comi to Ponzillo ". . . was not acknowledged or was improperly acknowledged and . . . there was also a lack of acknowledgment or affidavit of consideration. . . ." Consequently, the purchaser charged that the trustee could not "give a good and marketable title to the purchaser"

The matter was referred to the Master in Chancery, Harry M. Sachs, Jr. Mr. Sachs submitted a "Report and Recommendation" to the Chancellor in which Sachs concluded that, ". . . the purchaser takes good title from the trustee and that the equitable lien which is in the process of being enforced by virtue of these proceedings takes a priority over the other lien creditors if there be any."

The purchaser noted exceptions to the Master's report and recommendation. Judge Joseph C. Howard, after a hearing

on the exceptions to the Master's report, issued an order dated February 20, 1975 in which he overruled the purchaser's exceptions and affirmed the report of the Master. In the same order Judge Howard "ratified and confirmed" the sale by the trustee to Berean Bible Chapel, Inc., and Berean entered an appeal to this Court. We shall affirm Judge Howard's order for the reasons hereinafter stated.

The acknowledgment portion of the form mortgage executed by Comi in favor of Ponzillo reads:

> "On this 22nd day of May, 1972, before me, a Notary Public of said State, personally appeared _____ known to me, or satisfactorily proven to be the person whose name is subscribed to the within Mortgage, and who acknowledged that she executed the same for the purposes therein contained. At the same time also appeared _____ agent of the within named corporation, Mortgagee, and made oath in due form of law that the consideration set forth in said mortgage is true and bona fide as therein set forth, and also made oath that he is the agent of the Mortgagee and duly authorized to make this affidavit.
>
> As Witness my hand and Notarial Seal."

Thereafter the notary subscribed her name and affixed her official seal.

The Court of Appeals in *Pagenhardt v. Walsh,* 250 Md. 333, 335, 243 A. 2d 494, 496 (1968) quoted H. Ginsberg and I. Ginsberg, *Mortgages and Other Liens in Maryland* 56 (1936), wherein the authors state:

> "If the affidavit [of consideration] is lacking or if the affidavit is bad, the mortgage will, as a general rule, have no effect except as between the parties. The mortgage is not absolutely void, but will have the effect of an equitable mortgage. As such mortgage, it will yield to the specific lien created by an attachment, even though such attachment is

based on a prior existing debt. But it will be good against a judgment creditor who acquires such judgment subsequent to the mortgage but on a prior debt."

Judge Singley, writing for the Court in *Pagenhardt*, after noting the history of the Court's treatment of the various cases that it had considered with respect to a lack of or defective affidavit of consideration or acknowledgment (at 336-338), went on to say:

"... [S]trict and literal standards are to be applied to the *form* of the affidavit. *Dyson v. Simmons*, [48 Md. 207 (1878)] ...; *Reiff v. Eshleman*, [52 Md. 582, 588 (1879)] ..., which holds that the making of the oath cannot be the subject of parol proof; *Jackson v. County Trust Co.*, [176 Md. 505, 6 A. 2d 380 (1939)].... An affidavit deficient in form . . . like a defective mortgage, except as between the parties, or as to those having actual notice, is regarded by the Maryland cases as a nullity, since it creates no valid lien and cannot be regarded as having put subsequent creditors on constructive notice." 250 Md. at 338.

*See also Dryfoos v. Hostetter*, 268 Md. 396, 403, 302 A. 2d 28 (1973).

Under the *Pagenhardt* and *Dryfoos* holdings the mortgage in the instant case, except as between the parties, would be a nullity with respect to subsequent creditors without actual knowledge, were it not for the curative provisions of Real Property Art. § 4-109.[1] That section provides, in pertinent part:

"(a) *Defective grants recorded before January 1, 1973.*

— If an instrument was recorded before January 1,

---

1. This section is the successor to Ch. 349, § 1, [1972] Md. Laws 1026 (repealed 1974). The current code provision represents stylistic changes as well as new language derived from former Article 21, § 4-109. The predecessor to Ch. 349, § 1, [1972] Md. Laws 1026, *i.e.*, Ch. 479, [1971] Md. Laws 1047, was declared unconstitutional in Dryfoos v. Hostetter, *supra*.

1973, any failure of the instrument to comply with the formal requisites listed in this section has no effect, unless the defect was challenged in a judicial proceeding commenced by July 1, 1973.

\* \* \*

(c) *Failures in formal requisites of an instrument.* — For the purposes of this section the failures in the formal requisites of an instrument are:

(1) A defective acknowledgment;

(2) A failure to attach any clerk's certificate;

(3) An omission of a notary seal or other seal;

(4) A lack of or improper acknowledgment or affidavit of consideration or disbursement; or

(5) An omission of attestation."

There can be no doubt that the legislature has full power to pass curative statutes. *Winegert v. Zeigler,* 91 Md. 318, 326, 46 A. 1074, 1077 (1900). The Court, in *Dryfoos v. Hostetter,* 268 Md. at 404, declared:

"Curative acts have been enacted at virtually every session of the General Assembly commencing with Ch. 208, of the Laws of 1858. They have as their general purpose the validation of conveyances which might otherwise have been challenged because of some deficiency in form or content. Although curative acts may be broadly characterized as being retroactive or retrospective in their operation, they are generally sustained on the theory that whatever a sovereign power may authorize in prospect, it may adopt and validate in retrospect, so long as there is no interference with vested rights or contractual obligations. . . ."

2 Sutherland, *Statutes and Statutory Construction* § 41.11 (4th ed. C. Sands 1973) states:

"A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings,

instruments, or acts of public and private administrative authorities which in the absence of such an act would be void for want of conformity with existing legal requirements, but which would have been valid if the statute had so provided at the time of enacting."

The test usually used for determining the validity of curative acts may be stated thusly: if the legislature had the power to enact originally the matters now sought to be enacted as curative, such legislation is valid. 2 Sutherland, *Statutes and Statutory Construction* § 41.11. *See also Dryfoos v. Hostetter, supra; Goddard v. Frazier*, 156 F. 2d 938 (10th Cir. 1946), *cert. denied* 329 U. S. 765, 67 S. Ct. 124, 91 L. Ed. 659 (1946); 2 T. Cooley, *Constitutional Limitations*, 775 (8th ed. W. Carrington 1927).

When we apply the "test" to the case now before us, we observe that the legislature could have required or not required an affidavit of consideration or an acknowledgment. Certainly, there is no constitutional requirement that deeds or mortgages be sworn to in order to be valid. The purpose of the acknowledgment or affidavit is to protect, insofar as possible, the rights of subsequent creditors from sham mortgages and at the same time assure that the mortgage is *bona fide*. The acknowledgment also protects a property owner, to some extent, from a possible fictitious mortgage. In any event, the oath or affidavit could, should the legislature desire, be eliminated just as has been done with the necessity of a "seal".[2] The General Assembly may also validly shorten the time in which subsequent creditors without notice, may act against property because the statute of limitations confers no vested rights. *Allen v. Dovell*, 193 Md. 359, 66 A. 2d 795 (1949).

Inasmuch as the legislature could have abolished the legal requirement of acknowledgment and affidavit and could have shortened the statute of limitations, so long as no one's substantive rights were impaired, it could and did validly enact the curative provisions of the Real Property Article.

---

2. *See* Real Property Art. § 4-101 (b).

The mortgage from Comi to Ponzillo was defective as originally recorded. The mortgage was valid as between the parties but a nullity as to subsequent creditors without actual notice. Such was the situation from May 22, 1972, the date of the mortgage, until July 1, 1973 when Real Property Art. § 4-109 (a) eliminated the possibility of such a creditor's exercising a lien paramount to the "cured" mortgage. Section 4-109 (a) bars any prior or subsequent creditor of the mortgagor from seeking to exercise a lien on the mortgagor's property that is superior to the "cured" mortgage if the creditor did not judicially commence his challenge to the mortgage by July 1, 1973. Obviously, in the instant case the final date for a creditor to commence a challenge to the mortgage was fifteen months past at the time of the foreclosure sale. Neither prior nor subsequent creditors were any longer allowed to challenge the validity of the mortgage. Thus, the mortgage was valid, the trustee could convey good and marketable title, and exceptions to the sale were properly denied.

*Order ratifying and confirming
foreclosure sale affirmed.
Costs to be paid by appellant.*