40 A.3d 494

**Paul SVRCEK**

v.

**Diane S. ROSENBERG et al.**

**No. 988, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

March 29, 2012.

706

Scott C. Borison, Frederick, MD (Legg Law Firm, LLC, Jonathan D. Suss, PhD, Silver Spring, MD, on the brief), for appellant.

John A. Ansell, III (Rosenberg & Associates, LLC, on the brief), Bethesda, MD, for appellee.

Panel: WOODWARD, WRIGHT, ARRIE W. DAVIS (Retired, Specially Assigned), JJ.

ARRIE W. DAVIS (Retired, Specially Assigned), J.

This appeal arises out of a foreclosure sale of property owned by Paul Svrcek, appellant. On October 8, 2009, Diane S. Rosenberg, Mark D. Meyer, and John A. Ansell III, appellees, acting as substitute trustees, commenced an action to foreclose a lien pursuant to a power of sale by filing an order to docket in the Circuit Court for Queen Anne's County. On January 29, 2010, Svrcek's property was sold to "Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT–A Trust, Mortgage Pass–Through Certificates Series 2006–4." The circuit court entered a final ratification of the sale on July 14, 2010 and this timely appeal followed.

## Issues Presented

Svrcek presents three issues [1] for our consideration, which we have rephrased slightly as follows:

---

1. The issues, as stated in Svrcek's brief, are as follows:

I. Because the appellees did not have the legal right to initiate a foreclosure under the Maryland Rules, the foreclosure should have been dismissed.

I. Whether appellees had the legal right to initiate a foreclosure;

II. Whether the appointment of appellees as substitute trustees was not effective because it was executed by an attorney in fact without a power of attorney recorded in the land records of Queen Anne's County; and,

III. Whether the deed of trust was invalid because it failed to name an individual as trustee and the Legislature could not make it valid through curative legislation.

For the reasons set forth below, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2005, Svrcek executed an adjustable rate promissory note in the amount of $486,000 to Taylor, Bean & Whitaker Mortgage Corp. for the purpose of refinancing his property located at 100 Holly Court in Stevensville. The note was secured by a deed of trust, executed on the same date, to Taylor, Bean & Whitaker Mortgage Corp. The deed of trust contained a power of sale provision.

It is uncontroverted that, on or before June 1, 2006, Svrcek's loan was sold or transferred into a pool of securitized trust, "Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT–A Trust, Mortgage Pass–Through Certificates Series 2006–4." [2] Citibank, N.A. was named as Trustee and

---

II. The appointment of substitute trustees is of no effect because it was executed by an attorney of fact without a power of attorney recorded in the land records of Queen Anne's County.

III. The deed of trust failed to name an individual as a trustee and was invalid. The legislature may not seek to make an invalid deed valid through special legislation.

**2.** Recently, in *Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011), the Court of Appeals discussed the securitization process and the Mortgage Electronic Registration System (MERS) as follows:

Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L.Rev. 1359, 1367 (2010). The investment bank bundles together the

EMC Mortgage Corporation was named as servicer. It is also uncontroverted that, for about three years, Svrcek made payments on the note to EMC Mortgage Corporation.

On or about July 31, 2009, Svrcek received a notice of intent to foreclose on his property. The notice identified the mortgage lender as "TAYLOR BEAN & WHITAKER," the loan servicer as "EMC Mortgage Corporation," and the secured party as "Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT–A Trust, Mortgage Pass–Through Certificates Series 2006–4," which we shall hereinafter refer to as "Citibank, N.A. as Trustee."

---

multitude of mortgages it purchased into a "special purpose vehicle," usually in the form of a trust, and sells the income rights to other investors. *Id.* A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors. *Id.*

Mortgage-securitization investors utilize the Mortgage Electronic Registration System (MERS), a private land-title registration system created by mortgage banking companies to expedite the securitization process. *See Jackson v. Mortg. Elec. Registration Sys.*, 770 N.W.2d 487, 490 (Minn.2009). MERS increases the efficiency and profitability of mortgage markets by skirting the traditional land-title recording process in localities, which can be costly and time consuming, and replacing it with the industry's own electronic tracking system. *See Jackson*, 770 N.W.2d at 490–91. To do so, the mortgage broker names MERS as a nominal mortgagee in the mortgage. Then, subsequent transfers of the mortgage are recorded electronically and entirely on MERS while the original mortgage, recorded in the public land title records, remains unchanged. *Jackson*, 770 N.W.2d at 490; *Peterson, supra*, at 1371. MERS's industry-appreciated virtues have made it a near ubiquitous aspect of contemporary residential mortgages; two-thirds of all newly originated residential loans in the United States name MERS as the nominal mortgagee. *See Jackson*, 770 N.W.2d at 491–92; *Peterson, supra*, at 1370.

*Anderson*, 424 Md. at 237–38, 35 A.3d 452.

In the case before us, the Deed of Trust identified "MERS" as the beneficiary:

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender [Taylor, Bean & Whitaker Mortgage Corp.] and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of

On October 8, 2009, appellees Diane S. Rosenberg, Mark D. Meyer and John A. Ansell III, acting as substitute trustees, filed in the Circuit Court for Queen Anne's County an order to docket pursuant to Maryland Rules 14–204[3] and 14–207.[4] The

_____

Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501–2026, tel. (888) 679–MERS.

3. Maryland Rule 14–204(a) (2009 Supp.) provided:

(a) **Who may file.** (1) Under power of sale. Subject to compliance with subsection (a)(3) of this rule, any individual authorized to exercise a power of sale may institute an action to foreclose the lien.

(2) Under assent to decree. A secured party may file an action to foreclose the lien under an assent to a decree, except that an action to foreclose a deed of trust shall be instituted by the beneficiary of the deed of trust, any trustee appointed in the deed, or any successor trustee.

(3) Fractional owners of debt. Except when the lien instrument is a deed of trust, a power of sale may not be exercised, and the court may not enter an order for a sale under an assent to a decree, unless the power is exercised or application for an order is made or consented to by the holders of 25% or more of the entire debt due under the lien instrument.

(b) **Priority of actions.** If more than one party is authorized under these Rules to file an action to foreclose a lien, the first such party to file an action acquires the exclusive right to foreclose.

4. Maryland Rule 14–207 (2009 Supp.) provided:

(a) **Pleadings allowed.** (1) Power of sale. An action to foreclose a lien pursuant to a power of sale shall be commenced by filing an order to docket. No process shall issue.

(2) Assent to a decree or lien instrument with no power of sale or assent to a decree. An action to foreclose a lien pursuant to an assent to a decree or pursuant to a lien instrument that contains neither a power of sale nor an assent to a decree shall be commenced by filing a complaint to foreclose. If the lien instrument contains an assent to a decree, no process shall issue.

(3) Lien instrument with both a power of sale and assent to a decree. If a lien instrument contains both a power of sale and an assent to a decree, the lien may be foreclosed pursuant to either.

(b) **Exhibits.** A complaint or order to docket shall be accompanied by:

(1) a copy of the lien instrument supported by an affidavit that it is a true and accurate copy, or, in an action to foreclose a statutory lien, a copy of a notice of the existence of the lien supported by an affidavit that it is a true and accurate copy;

(2) an affidavit by the secured party, the plaintiff, or the agent or attorney of either that the plaintiff has the right to foreclose and a statement of the debt remaining due and payable;

order to docket was accompanied by a number of documents, including: (1) a copy of the promissory note executed by Svrcek and naming Taylor Bean & Whitaker Mortgage Corp. as the lender; (2) a deed of appointment of substitute trustees dated September 22, 2009, and filed in the circuit court on October 8, 2009, by which appellees were named substitute trustees by "EMC Mortgage Corporation as Attorney in Fact for Citibank, N.A. as Trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT–A Trust, Mortgage Pass–Through Certificates Series 2006–4," (hereinafter referred to as "EMC Mortgage Corp. as Attorney in Fact for Citibank, N.A. as Trustee"); and, (3) a deed of trust that named Taylor Bean & Whitaker Mortgage

---

(3) a copy of any separate note or other debt instrument supported by an affidavit that it is a true and accurate copy and certifying ownership of the debt instrument;

(4) a copy of any assignment of the lien instrument for purposes of foreclosure or deed of appointment of a substitute trustee supported by an affidavit that it is a true and accurate copy of the assignment or deed of appointment;

(5) an affidavit with respect to any defendant who is an individual that the individual is not in the military service of the United States as defined in the Servicemembers Civil Relief Act, 50 U.S.C. app. §§ 501 *et seq.*, or that the action is authorized by the Act;

(6) a statement as to whether or not the property is residential property;

(7) in an action to foreclose a lien instrument on residential property, to the extent not produced in response to subsections (b)(1) through (b)(5) of this Rule, the information and papers required by Code, Real Property Article, § 7–105.1(d), except that if the name and license number of the mortgage originator and mortgage lender is not required in the notice of intent to foreclose, the information is not required in the order to docket or complaint to foreclose; and

(8) in an action to foreclose a land installment contract on property other than residential property, an affidavit that the notice required by Rule 14–205(c) has been given.

(c) **Court screening.**—As part of its case management plan, a circuit court may adopt procedures for the court to screen orders to docket and complaints to foreclose a lien. If the court determines that the papers filed do not comply with all statutory and Rule requirements, it may give notice to the plaintiff that the action will be dismissed without prejudice if the plaintiff does not demonstrate within 30 days that the papers are legally sufficient or that the deficiency has been cured.

Corp. as the lender.[5]

**5.** In *Anderson v. Burson,* the Court of Appeals reviewed the process of commencing a foreclosure action such as that involved in the instant case:

> A foreclosure plaintiff commences an action to foreclose a deed of trust, which contains a power of sale provision, by filing an order to docket. *See* Md. Rule 14–207(a)(1); Md.Code Ann., Real Prop. § 7–105.1(d) (LexisNexis Supp.2011). An order to docket must include, among other documentation: a copy of the deed of trust, supported by an affidavit that it is a true and accurate copy; a copy of the debt instrument, supported by an affidavit certifying ownership of the debt instrument; and a deed of appointment of a substitute trustee, supported by an affidavit that it is a true and accurate copy of the deed of appointment. Md. Rule 14–207(b); Real Prop. § 7–105.1(d)(1)(2).
>
> The Circuit Court may not accept a lost note affidavit, in lieu of a copy of the debt instrument, unless the affidavit: "(1) [i]dentifies the owner of the debt instrument and states from whom and the date on which the owner acquired ownership; (2) [s]tates why a copy of the debt instrument cannot be produced; and (3) [d]escribes the good faith efforts made to produce a copy of the debt instrument." Real Prop. § 7–105.1(d–1).

*Anderson,* 424 Md. at 236, n. 6, 35 A.3d 452.

Recently, in *Maddox v. Cohn,* the Court of Appeals again had occasion to comment on lost note affidavits, bundled mortgages, and the difficulties encountered in ascertaining who holds a mortgage or instrument of indebtedness, stating:

> Very serious title issues are in the future, if not already appearing, as title and settlement attorneys seek to clear titles, and title insurance companies attempt to insure them, where these bundled mortgages appear in the chain of title (or worse, where they are not evidence from the land records). In many instances, if not most instances, such attorneys may be unable to ascertain who then holds the mortgage as the mortgages and/or the instruments of indebtedness they secure have been bundled in groups of as many as a thousand mortgages or instruments attached to derivatives and traded like stocks. The transfers of derivatives from buyer to buyer is not recorded among the land records of the county where the land is situate, but, in "derivative" transfer ledgers somewhere on Wall Street or in some stock exchange somewhere. Many are allegedly tracked by an entity called the Mortgage Electronic Registration System (MERS) ... which operates completely outside the land records offices throughout the various states. Often MERS, or a counterpart, is named as a nominee for the actual lender in the original instrument but then the actual lender transfers the instrument. In other words the land document, the mortgage and/or lending instrument, is assigned (bought and sold) without there being any assignment of the instrument recorded in the land records.
>
> Apparently, in many instances, even though the mortgage servicer allegedly can retrieve the appropriate document, or documents, by

On October 15, 2009, the circuit court entered a memorandum order that provided as follows:

**No foreclosure sale may occur in this matter until the following deficiencies in the Order to Docket are cured:**

1. The affidavit regarding the required Notice of Intent to Foreclose must include, in addition to the date on which notice was sent, a statement that the requirements of § 7–105.1(c)(2)(i)(ii) of the Real Property Article were met, **together with the *original* of the return receipt,** purportedly sent on July 31, 2009.

2. The *recorded* original or a certified copy of the assignment of the mortgage/deed of trust and/or certified copy of assignment of note from Taylor, Bean & Whitaker Mortgage Corp. to EMC Mortgage Corporation as Attorney in Fact for Citibank, N.A., as Trustee for Certificateholders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT–A Trust, Mortgage Pass–Through Certificates, Series 2006–4.

As to the second deficiency, the court also noted that "[a]n alternative would be to file the original note."

Appellees filed a motion to reconsider in which they argued that the affidavit they filed met the requirements of Md.Code (2003 Repl.Vol., 2009 Cum.Supp.), § 7–105.1 of the Real Property Article (R.P.),[6] and that neither that section nor Md. Rule

---

going through the Mortgage Electronic Registration System (MERS), or a counterpart, it is a somewhat time consuming process. This has led to the practice of such mortgage servicers attempting to routinely initiate foreclosures via filing an Affidavit of Lost Instrument. The widespread use of such methods to initiate foreclosures raises serious perjury issues on the part of the persons making the affidavit. The instruments are not lost, they are somewhere in MERS system and, generally, the affiant is well aware that the mortgage or other instrument of indebtedness is not actually lost.
*Maddox v. Cohn*, 424 Md. 379, 36 A.3d 426 (2012).

6. At the time of the underlying proceedings, R.P. § 7–105.1(d) provided, in relevant part, as follows:
 (d) An order to docket or a complaint to foreclose a mortgage or deed of trust on residential property shall:
 (1) Include:

14–207 required the filing of the original return receipt for the certified mailing of the notice of intent to foreclose. On December 3, 2009, Svrcek responded by filing an "Emergency Motion to Enforce Order and Shorten Time to Respond," in which he opposed appellees' motion to reconsider on the ground that they did not address the second deficiency noted by the court, and requested the court to stay the foreclosure sale and rule on the pending motions before December 4, 2009, the scheduled date for the foreclosure sale. On December 7, 2009, appellees responded to Svrcek's "Emergency Motion" by stating, among other things, that they did not address the second deficiency because they "were awaiting a copy of the recorded assignment from the land records," and that a "copy of the recorded assignment is being filed simultaneously with this response."

The document filed by appellees was a photocopy of an assignment of a deed of trust executed on October 22, 2009, and filed in the circuit court on October 30, 2009, by which

---

(i) If applicable, the license number of:
 1. The mortgage originator; and
 2. The mortgage lender; and
(ii) An affidavit stating:
 1. The date on which the default occurred and the nature of the default; and
 2. If applicable, that
 A. A notice of intent to foreclose was sent to the mortgagor or grantor in accordance with subsection (c) of this section and the date on which the notice was sent; and ...
(2) Be accompanied by:
 (i) The original or a certified copy of the mortgage or deed of trust;
 (ii) A statement of the debt remaining due and payable supported by an affidavit of the plaintiff or the secured party or the agent or attorney of the plaintiff or secured party;
 (iii) A copy of the debt instrument accompanied by an affidavit certifying ownership of the debt instrument;
 (iv) If applicable, the original or a certified copy of the assignment of the mortgage for purposes of foreclosure or the deed of appointment of a substitute trustee;
 (v) If any defendant is an individual, an affidavit that:
 1. The individual is not a servicemember, as defined in the Servicemembers Civil Relief Act, 50 U.S.C. Appendix § 511; or
 2. The action is authorized by the Act;
 (vi) If applicable, a copy of the notice of intent to foreclose[.]

Taylor, Bean & Whitaker Mortgage Corp. assigned the deed of trust executed by Svrcek on November 4, 2005, to EMC Mortgage Corp. as Attorney in Fact for Citibank, N.A. as Trustee.

On December 8, 2009, the circuit court denied Svrcek's motion as "moot," noting that Svrcek had "actual notice based upon his filing of a motion" on December 3, 2009, and that appellees had "filed the requisite assignment."

On January 7, 2010, Svrcek filed a motion to vacate the sale[7] and dismiss the foreclosure proceedings in which he requested, among other things, that the sale of the subject property be stayed and that appellees be required to produce certain documentation. Specifically, Svrcek argued that he was not indebted to Citibank, N.A., as Trustee because it did not own the promissory note and did not have authority to appoint appellees as substitute trustees and, as a result, appellees lacked standing to foreclose on his property. According to Svrcek, appellees failed to establish the identity of the true owner and holder of the promissory note as well as a valid chain of title transferring ownership of the loan from the original lender to EMC Mortgage Corp. as Attorney in Fact for Citibank, N.A. as Trustee.

Svrcek argued that the October 22, 2009 assignment of the deed of trust from Taylor, Bean & Whitaker Mortgage Corp. to Citibank, N.A. as Trustee, which was filed among the land records of Queen Anne's County on October 30, 2009, was not valid and that Citibank, N.A. as Trustee was not the secured party at the time the order to docket was filed on October 8, 2009. Svrcek requested the court to require appellees to produce the original promissory note, a full accounting of money paid and received on Svrcek's account and proof that EMC Mortgage Corp. as Attorney in Fact for Citibank, N.A. as Trustee had "not received third-party payments on

---

7. We note that, although Svrcek's motion was titled, in part, "motion to vacate the sale," he actually sought an order staying the sale of the subject real property, as the property had not yet been sold.

[Svrcek's] loan obligation and is unaware that any such third-party payments have been made."

On January 26, 2010, appellees filed an opposition to Svrcek's motion on the ground that it was untimely because, contrary to the provisions of Maryland Rule 14–211(a)(2),[8] his request for a stay was filed more than fifteen days after service of the order to docket. In addition, appellees argued that Citibank, N.A. as Trustee was the owner of the debt notwithstanding the fact that the assignment of the deed of trust was executed after the order to docket was filed. Appellees asserted that the note was actually transferred to Citibank, N.A. as Trustee on April 3, 2006, and that the unassigned deed of trust secured the holder of the note, Citibank, N.A. as Trustee. In response to Svrcek's argument that the note was not validly transferred to Citibank, N.A. as Trustee because there was no endorsement on it, appellees asserted that "most endorsements are on the back page of the original note" and the original note in the instant case was "in the document vault of EMC Mortgage, the servicing agent and Citibank's attorney in fact." In addition, appellees argued that there is no Maryland law or rule that requires the production of the original note.

On January 29, 2010, the property was sold at public auction to Citibank, N.A. as Trustee and, thereafter, appellees filed a report of sale with the court.

---

**8.** Maryland Rule 14–211(a)(2)(Supp.2009), which governed motions to stay and dismissals of actions, provided:

> (2) Time or filing. In an action to foreclose a lien on residential property, a motion by a borrower or record owner to stay the sale and dismiss the action shall be filed within 15 days after service pursuant to Rule 14–209 of an order to docket or complaint to foreclose. A motion to stay and dismiss by a person not entitled to service under Rule 14–209 shall be filed within 15 days after the moving party first became aware of the action. For good cause, the court may extend the time for filing the motion or excuse non-compliance.

> This rule has since been amended. *See* Md. Rule 14–211(a)(2)(A)–(C) (2011).

Notwithstanding their claim that the original note was in a document vault belonging to EMC Mortgage Corp., at a motions hearing on February 23, 2010, appellees produced a "Lost Note Affidavit" in which EMC Mortgage Corp., as Attorney in Fact for Citibank, asserted:

1. The original Note was dated November 4, 2005, in the original principal amount of Four Hundred Eighty–Six Thousand, and 00/100 Dollars ($486,000.00) and secured by that certain Deed of Trust executed by Paul Svrcek dated November 4, 2005 and recorded in the Land Record Office for Queen Anne's County, Maryland at Liber 1485, Folio 267. The Note bears interest at a rate of 5.875% (per cent) per annum.

2. That the original Note has been lost, but a copy is attached.

3. That the holder of the Note is EMC Mortgage Corporation as Attorney in Fact for CITIBANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II, INC., BEAR STEARNS ALT–A TRUST, MORTGAGE PASS THROUGH CERTIFICATES SERIES 2006–4.

4. That the Note is in default.

After the February 23, 2010 hearing, Svrcek filed a motion to vacate a void sale, to dismiss the foreclosure, and impose sanctions, in which he argued, *inter alia*, that the lost note affidavit should be stricken from the record, that appellees should be required to produce the original promissory note and that appellees never had standing to bring the foreclosure action and sell the subject property. Appellees opposed Svrcek's motion on numerous grounds, including that Md. Rule 14–207(b)(3) required only a copy of the note or debt instrument, along with an affidavit declaring it to be a true and accurate copy and certifying ownership of the note or debt instrument, both of which were previously provided to Svrcek.

On May 26, 2010, the circuit court issued a written memorandum and order denying Svrcek's motions and overruling his exceptions to the sale of the property. The court deter-

mined that good cause did not exist for Svrcek's late filing of his motion to stay, that the order to docket properly identified the holder of the note, that the deed of trust followed the note and that the copy of the note, which was filed with a certificate stating that the note was a true and correct copy of the original, was sufficient to satisfy Md. Rule 14–207(b)(3), which required only a copy of the note. In addition, the court stated:

> The Court does not find any of the arguments of defendants [sic] persuasive. Defendant is clearly in default on his contractual obligations, including specifically the underlying loan payments, and there is no suggestion to the contrary. The issue focuses on the standing of the purported noteholder to appoint the substitute trustees and/or to enforce the note through a foreclosure sale. There is no need to take evidence in this case. Md. Rule 14–305(d)(2). None of the claimed factual or legal bases presented by defendant provides any basis for either staying these proceedings, much less setting aside the sale, as defendant is clearly in default and plaintiffs are properly foreclosing as it is a remedy available to them and prescribed in the deed of trust and by statute. The Court will deny the motions and ratify the sale.

(Internal footnote omitted).

On July 14, 2010, the court issued a final order ratifying the sale and referred the case to an auditor. This timely appeal followed.

## DISCUSSION

### I

Svrcek first contends that appellees did not have the legal right to initiate the foreclosure proceeding under the Maryland Rules and, therefore, he was entitled to have the sale stayed and the foreclosure proceeding dismissed. We disagree and explain.

## A. Standard of Review

As the Court of Appeals stated in *Bates v. Cohn*, 417 Md. 309, 9 A.3d 846 (2010), "[b]efore a foreclosure sale takes place, the defaulting borrower may file a motion to 'stay the sale of the property and dismiss the foreclosure action.'" *Id.* at 318, 9 A.3d 846 (quoting Md. Rule 14–211(a)(1)). In other words, the borrower "may petition the court for injunctive relief, challenging 'the validity of the lien or . . . the right of the [lender] to foreclose in the pending action.'" *Id.* at 318–19, 9 A.3d 846 (quoting Md. Rule 14–211(a)(3)(B)). "The grant or denial of injunctive relief in a property foreclosure action lies generally within the sound discretion of the trial court." *Anderson v. Burson*, 424 Md. at 243, 35 A.3d 452 (2011)(and cases cited therein). Accordingly, we review the circuit court's denial of a foreclosure injunction for an abuse of discretion. *Id.* We review the trial court's legal conclusions *de novo*. *Wincopia Farm, LP v. Goozman*, 188 Md.App. 519, 528, 982 A.2d 868 (2009).

## B. Svrcek's Motion to Enforce and Shorten Time

Preliminarily, we note that the trial court's conclusion that the motion was moot was proper because appellees had complied with all of the requirements of R.P. § 7–105.1(d)(2) and Maryland Rule 14–207(b). Along with, and in support of, their order to docket, appellees provided copies of the following: the promissory note and deed of trust; an affidavit of note ownership identifying the owner of the promissory note as EMC Mortgage Corporation as Attorney in Fact for Citibank, N.A. as Trustee; a certificate stating that the copy of the note that was attached was "a true and accurate copy of the same as delivered [to the substitute trustees] by the note holder and/or its servicing agent;" an affidavit pursuant to R.P. § 7.105.1 and Md. Rule 14–207; a statement of debt; and, a copy of the deed appointing them as substitute trustees. A question is moot "if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Bd. of Physician*

*Quality Assurance v. Levitsky,* 353 Md. 188, 200, 725 A.2d 1027 (1999)(quoting *Attorney Gen. v. Anne Arundel County School Bus Contractors Assoc.,* 286 Md. 324, 327, 407 A.2d 749 (1979)). Svrcek's motion centered on whether the foreclosure sale should be stayed due to appellees' failure to correct the deficiencies noted in the trial court's October 14, 2009 order. Clearly, the papers filed by appellees corrected the deficiencies and, as a result, the issue was rendered moot.

## C. Timeliness

■ Nor did the court abuse its discretion in denying Svrcek's initial motion (to the extent that it sought to stay the sale and dismiss the foreclosure proceeding), or his subsequently filed motion to "vacate" the sale and dismiss the foreclosure proceedings because both were untimely. Under Md. Rule 14–211, Svrcek was required to file a motion to stay the sale of the property and dismiss the foreclosure action "within 15 days after service pursuant to Rule 14–209 of an order to docket or complaint to foreclose." Md. Rule 14–211 (2009 Supp.). Although a court may extend the time for filing the motion or excuse non-compliance for good cause shown, it did not find good cause to do so in this case. *Id.*

Svrcek admitted in his affidavit in support of his motion to stay the sale of the property and dismiss the foreclosure action that he "first became aware of the foreclosure proceedings when [he] was served with an Order to Docket on or about October 10, 2009." Svrcek claimed that he did not know he had fifteen days to file such a response because there was "nothing so noted in the Order to Docket of any time frame in which to respond." As we have said on many occasions, however, "ignorance of the law is no excuse." *Hi Caliber Auto and Towing, Inc. v. Rockwood Cas. Ins. Co.,* 149 Md. App. 504, 508, 817 A.2d 274 (2003). Accordingly, the circuit court did not err in concluding that Svrcek did not have good cause for failing to file his request for a stay of the sale or the dismissal of the foreclosure action within fifteen days as required by the rule, or in denying his motion on the ground that it was not filed in a timely manner.

### D. No Valid Defense to the Validity of the Lien or Lien Instrument

■ Even if the circuit court had found good cause for the late filing of Svrcek's motion, the court would have acted properly in denying the motion because it failed to state a legitimate defense to the validity of the lien or the lien instrument and the right of the appellees to foreclose. Md. Rule 14–211(b)(1)(C). For the same reason, even if we assume that the arguments raised in Svrcek's post-sale motion to vacate a void sale, to dismiss the foreclosure and impose sanctions were appropriately raised under Md. Rule 14–305, the court did not err in denying them because the motion raised substantially the same issues that were presented in Svrcek's earlier motions.[9]

Svrcek argued that appellees failed to meet their burden of proving that they possessed the promissory note currently and lawfully. The Court of Appeals recognized, in *Anderson*, that "a reputed transferee in possession of an unendorsed mortgage note has the burden to establish its rights under that note—especially in instances where the mortgagor requests an injunction to foreclose enforcement by the possessor based on such a defense." *Anderson*, 424 Md. at 245, 35 A.3d 452. Pursuant to Md. Rule 14–207(b)(3), appellees produced a copy of the note as an attachment to their order to docket, but the copy did not show any endorsements. At that point, appellees appeared to be in possession of an unendorsed mortgage note and they were required to prove the note's prior transfer

---

9. The circuit court treated Svrcek's post-sale motion, at least in part, as an exception to the sale pursuant to Md. Rule 14–305, and determined, among other things, that Svrcek failed to present any basis for setting aside the sale. The Court of Appeals has commented that "Rule 14–305 is not an open portal through which any and all pre-sale objections may be filed as exceptions, without regard to the nature of the objection or when the operative basis underlying the objection arose and was known to the borrower." *Bates v. Cohn*, 417 Md. 309, 327, 9 A.3d 846 (2010). In this case, we need not determine whether the post-sale objections raised by appellant fell within the limited range of challenges that can be raised by exceptions because it is clear to us that Svrcek's post-sale motion raised precisely the same issues that were raised in the pre-sale motions and properly denied.

history. As the Court of Appeals stated in *Anderson*, "given the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly." *Id.* at 246–45, 35 A.3d 452.

That issue must be analyzed in light of Maryland's Commercial Law, which the Court of Appeals reviewed in *Anderson* as follows:

The Maryland Code, Commercial Law Article governs a negotiable promissory note that is secured by a deed of trust. *Silver Spring Title Co. v. Chadwick*, 213 Md. 178, 181, 131 A.2d 489, 490 (1957); *LeBrun v. Prosise*, 197 Md. 466, 474–75, 79 A.2d 543 (1951); Md.Code Ann., Com. Law § 9–203(g) & cmt. 9 (LexisNexis 2002). The deed of trust cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust. *LeBrun*, 197 Md. at 474, 79 A.2d at 548. Therefore, we analyze the parties' dispute here in light of the Commercial Law Article.

Whether a negotiable instrument, such as a deed of trust note, is transferred or negotiated dictates the enforcement rights of the note transferee. A transfer has two requirements: the transferor (any person that transfers the note, except the issuer) must intend to vest in the transferee the right to enforce the instrument (thieves and accidental transferees are excluded) and must deliver the instrument so the transferee receives actual or constructive possession. Com. Law § 3–203(b); 6B Lary Lawrence, *Anderson on the Uniform Commercial Code* § 3–203:5R (3d ed.2003). A transfer vests in the transferee only the rights enjoyed by the transferor, which may include the right to enforce the instrument. Com. Law. § 3–203(a)–(b).

A negotiation, by contrast, occurs when a holder—who is either the named payee of an instrument or the transferee of a negotiated instrument—transfers possession of an instrument, payable to bearer, to another. Com. Law § 3–201(a)–(b) & cmt. 1. A negotiation of an instrument payable to an identified person, however, requires the holder to

transfer possession and indorse the instrument, *i.e.,* negotiate the instrument. *Id.* Importantly, only a holder may negotiate an instrument. Com. Law § 3–203 cmt. 1. Thus, a recipient of a transferred instrument is a transferee, but a recipient of a negotiated instrument is a holder. With that distinction in mind, Commercial Law § 3–301 explains that a person entitled to enforce a negotiable instrument may be either of three varieties: "(i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder [*i.e.,* a transferee] or (iii) a person not in possession of the instrument who is entitled to enforce pursuant to § 3–309 . . . ."

*Id.* at 246–47, 35 A.3d 452.

In the case at hand, Citibank, N.A. as Trustee failed to establish that it was a holder of the Svrcek note, but established, instead, that it was a person not in possession of an instrument who is entitled to enforce it pursuant to § 3–309 of the Commercial Law Article, which provides:

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amendable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 3–308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the

instrument. Adequate protection may be provided by any reasonable means.

Md.Code (2002 Repl.Vol., 2009 Cum.Supp.), § 3–309 of the Commercial Law Article ("C.L.").

Appellees attached to their order to docket, among other things, a certified true copy of the promissory note, an affidavit of note ownership by which they certified that EMC Mortgage Corporation as attorney in fact for Citibank, N.A. as Trustee was the owner of the note, and a certification pursuant to Md. Rule 14–207 that the note was "a true and accurate copy" of the note that was delivered to them "by the note holder and/or its servicing agent." At no time did Svrcek ever deny that the copy of the note was, in fact, a copy of the note that he executed at settlement on the property. Nor did Svrcek ever claim that anyone other than Citibank, N.A. as Trustee, through its servicer, EMC Mortgage Corporation, had ever contacted him regarding payments due on the loan. Moreover, appellees' claim that for three years Svrcek made payments on the note to EMC Mortgage Corporation was not controverted. Nevertheless, Svrcek reasoned that, because the copy of the note submitted with the order to docket did not show any endorsements, there must not have been any endorsements. That reasoning is flawed. According to the affidavit provided by appellees, the note was lost. As a result, it cannot be said that endorsements are or are not present on the note, merely that no endorsements appear on the copy of the note that was provided in support of the order to docket.

Svrcek was also advised, in both the promissory note and deed of trust, that the note could be transferred. In support of his memorandum in support of his motion to stay the sale and dismiss the foreclosure action, Svrcek attached as an exhibit excerpts from the pooling and servicing agreement which was dated "as of *June 1, 2006*," and showed that EMC Mortgage Corporation was the servicer. At the hearing on February 23, 2010, the following colloquy occurred:

THE COURT: This pool, as I see it, in looking through the file, owned the note at the very beginning of the case and—

[COUNSEL FOR APPELLEES]: And owned it throughout.

THE COURT:—and bought the property at the sale—by a sale.

[COUNSEL FOR APPELLEES]: Correct, Your Honor. And I would also point out, the contention seems to be that the defendant was unaware who to make the payments to because of a lack of knowledge as to who the proper party was. Well, there were payments made for three years on the loan prior to the foreclosure sale having occurred. The—so I think—the confusion seems to only arise once the payments fell in arrears. There was no confusion for the three years prior, from the time—the loan was actually originated in '05. I think it was transferred in '06. For three years, there was no confusion as to who to make the payments to. That was not a question, it was never raised, so I think the—I don't think that's a valid contention, if that's the gist of the argument as I'm reading it.

At no point did Svrcek deny that he made payments to the owner of the note from 2006 until the time of default, nor did he object to the court's observation that the note was part of the pool beginning in 2006. All of this evidence supports the conclusion that the note was, at some time before June 1, 2006, transferred to Citibank, N.A. as Trustee, which received all the rights to enforce the note that Taylor, Bean & Whitaker had. Although Citibank, N.A. as Trustee was the owner of the note, the note was, at some point, lost. Thus, Citibank, N.A. as Trustee became a person not in possession of the note, but who was entitled to enforce it pursuant to C.L. § 3–309. The evidence before the circuit court supported the conclusion that Svrcek was "clearly in default on his contractual obligations," and that "[n]one of the claimed factual or legal bases presented by [Svrcek] provides any basis" for staying the proceedings or setting aside the sale. As a result, we cannot say that the trial judge abused his discretion in denying either Svrcek's motion to stay the sale and dismiss the foreclosure proceedings or his motion to vacate the sale.

### E. Assignment of the Deed of Trust

■ We also reject Svrcek's argument pertaining to the timing of the assignment of the deed of trust. The note was transferred to the "pool" no later than June 1, 2006, long before the commencement of the foreclosure proceeding and the recording of the assignment. Maryland law makes clear that once the note was transferred, the right to enforce the deed of trust followed. The Court of Appeals, in *Le Brun v. Prosise*, 197 Md. 466, 474–75, 79 A.2d 543 (1951), explained the legal effect of an assignment of a deed of trust:

> This deed of trust secures a negotiable note, whoever may be the holder. The deed of trust need not and properly speaking cannot be assigned like a mortgage, *cf. Jones on Mortgages*, § 1222; *Glenn on Mortgages*, § 338, but the note can be transferred freely, and, when transferred, carries with it the security, if any, of the deed of trust, which was true of a mortgage note before the Act of 1892, ch. 392, amended by Acts of 1910, ch. 719, now section 26. *Demuth v. Old Town Bank*, 85 Md. 315, 37 A. 266 [ (1897) ]. "The note and the mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

Thus, the assignment of the deed of trust from Taylor, Bean & Whitaker Mortgage Corp. to Citibank, N.A. as Trustee, executed on October 22, 2009 and filed in the circuit court on October 30, 2009, is of no consequence with respect to appellees' right to initiate the foreclosure proceeding.

## II

Svrcek next contends that the appointment of appellees as substitute trustees, which was evidenced by the deed of appointment of substitute trustees filed in the land records on October 8, 2009, was not effective because it was executed by an attorney in fact without a power of attorney recorded in the land records of Queen Anne's County. In support of his

contention, Svrcek directs our attention to R.P. § 4–107(a), which provided then, as it does now:

(a) *In general.*—Every power of attorney executed by any person authorizing an agent or attorney to sell and grant any property shall be executed in the same manner as a deed and recorded;

(1) Before the day on which the deed executed pursuant to the power of attorney is recorded;

(2) On the same day as the deed executed pursuant to the power of attorney; or

(3) Subject to subsection (b) of this section, after the day on which the deed executed pursuant to the power of attorney is recorded.

Svrcek asserts that, because no power of attorney was ever produced by appellees, the deed of appointment of substitute trustees was a nullity and, therefore, appellees did not have the right to initiate the foreclosure proceeding and it should have been dismissed.

■ Our review of the record before us reveals that Svrcek did not raise this particular issue below and, even if he had, he did not do so within the fifteen day period required by Md. Rule 14–211. As a result, this issue is not properly preserved for our review. Md. Rule 8–131(a).

■ Even if the issue had been preserved for our consideration, we would hold that R.P. § 4–107 is inapplicable in this particular case because the attorney in fact did not act to sell or grant property, but to appoint substitute trustees. The deed of appointment of substitute trustees did not convey property, but merely the right to initiate a foreclosure of the equity of redemption or otherwise act to protect the secured party's interest. "A deed of trust is a security device. It transfers legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary." *Springhill Lake Investors Ltd. P'ship v. Prince George's County,* 114 Md.App. 420, 428, 690 A.2d 535 (1997). "The conveyance transfers the estate of the debtor to the trustee, giving the

trustee legal title to the property. The debtor retains an 'equity of redemption' or the right to reassert complete [ ] ownership of the land, upon payment of the debt and any other charges rightly assessed under the terms of the lien instrument." *Fagnani v. Fisher,* 418 Md. 371, 383, 15 A.3d 282 (2011)(citing *Simard v. White,* 383 Md. 257, 272 n. 12, 859 A.2d 168 (2004)). A foreclosure sale serves only to eliminate the mortgagors' rights in the property, including the right of redemption.

■■■ The deed of appointment of substitute trustees is not a conveyance of an interest in property, but merely serves to appoint new trustees to exercise the lender's power under the deed of trust to foreclose the right of redemption, subject to the mortgagor's equitable right to redeem the property prior to the sale. In the case before us, the deed of trust, by its own terms, provided that "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. *Without conveyance of the Property,* the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law." (Emphasis added.) The substitution of trustees merely designated new individuals as having the right to enforce the deed of trust. Because the deed of appointment of substitute trustees merely authorized the trustees to foreclose the right of redemption and exercise the power of sale, R.P. § 4–107 was not implicated.

Svrcek's reliance on *Lubin v. Klein,* 232 Md. 369, 193 A.2d 46 (1963), is misplaced. In that case, an improperly acknowledged power of attorney was used as authority for a purported attorney in fact to execute a mortgage. Because the power of attorney was not acknowledged properly, and the person acting as the attorney in fact did not have the legal authority to charge the property with a lien, the mortgage itself was found to be void. The court reasoned that the defective power of attorney was "no different in principle than a mortgage that

is left unsigned by the mortgagor, and an unsigned mortgage should not be considered as sufficient evidence of an agreement to charge the land." *Id.* at 373, 193 A.2d 46.

The instant case does not involve the authorization of an attorney to sell or grant any property, but rather authorization to appoint substitute trustees. As a result, even if this issue had been properly preserved for our review, we would conclude that R.P. § 4–107(a) is not implicated.

## III

 Svrcek's final contention is that the deed of trust was void because it failed to name an individual as trustee and, as a result, there was no power of sale. He argues that the retroactive application of a curative statute that allowed for the appointment of an individual as substitute trustee was constitutionally impermissible because it rendered an invalid deed valid, thereby impairing his vested property rights. We are not persuaded by these arguments.

It is undisputed that the deed of trust at issue here contained a power of sale and assent to decree provision, and identified the original trustee as "The law offices of Daniel A. Fulco, PLLC." *See* Deed of Trust at ¶ 22. Paragraph 24 of the deed of trust provided that the "[l]ender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law." As we have already discussed, Taylor, Bean & Whitaker transferred the note to Citibank, N.A. as Trustee at some time before June 1, 2006 and, thereafter, on September 22, 2009, EMC Mortgage Corporation as Attorney in Fact for Citibank, N.A. as Trustee executed a deed of appointment of substitute trustees that named appellees as substitute trustees.

The issue regarding the trustee was raised for the first time at the motions hearing on February 23, 2010, when appellant's counsel advised the court as follows:

[Counsel for Svrcek]: Initially, Your Honor, the trustee is designated here as the Law Offices of Daniel A. Fulco, PLLC.

THE COURT: That's interesting.

[Counsel for Svrcek]: So rather—

THE COURT: So I know what issue you're going to there.

[Counsel for Svrcek]: Okay. I didn't raise that before because I wasn't aware of it, even though it goes back to the 19th Century and it's still good law.

THE COURT: This is going to be an issue with 14305, too, because this is after the sale, right?

[Counsel for Svrcek]: Well, Your Honor, I filed a motion before the sale. You scheduled a hearing. In between there, there came a sale date. So this is a problem we often encounter where a judge will, you know, schedule a hearing, but won't stay the sale, so the sale happened on January 29th and I think I filed a motion to set aside the sale.

THE COURT: Right.

In its written memorandum and order, the trial judge rejected Svrcek's argument on two grounds, stating:

As to the "corporate trustee issue," House Bill 633, signed into law by the Governor on May 4, 2010, and taking effect on June 1, 2010, effectively cures the "defect," if any, retroactively. Even without the legislation, which is primarily corrective in nature, the Court agrees with plaintiffs that a deed of trust, while presumptively void under Maryland law when a corporate entity is named trustee, permits the substitution of a natural person trustee to exercise the power of sale, as was done in this case.

As the trial judge recognized, in an attempt to avoid having deeds of trust that omit the name of a trustee, or that have an entity named as trustee, from being declared void, the General Assembly passed legislation, effective June 1, 2010, that estab-

lished that, if a mortgage or deed of trust allows, a trustee or individual authorized to exercise a power of sale may be appointed or substituted. In addition, if the deed of trust does not name a trustee, foreclosure on a property may occur so long as a trustee is appointed.

At the time of the underlying proceedings, R.P. § 7–105(a), provided:

(a) *Power of sale or assent to decree for sale.*—A provision may be inserted in a mortgage or deed of trust authorizing any *natural person* named in the instrument, including the secured party, to sell the property or declaring the borrower's assent to the passing of a decree for the sale of the property, on default in a condition on which the mortgage or deed of trust provides that a sale may be made.

(Emphasis added).

In 2010, the General Assembly's legislation amended R.P. § 7–105 to provide, in part:

(a) *"Individual" defined.*—In this section, "individual" means a natural person.

(b) *Effect of sale.*—(1) A mortgage or deed of trust may authorize the sale of the property or declare the borrower's assent to the passing of a decree for the sale of the property, on default in a condition on which the mortgage or deed of trust provides that a sale may be made.

(2) A power of sale or assent to decree authorized in a mortgage or deed of trust may be exercised only by an individual.

(3) The individual selling the property under a power of sale need not be named in the mortgage or deed of trust.

(4) An error or omission in a mortgage or deed of trust concerning the designation of the trustee or the individual authorized to exercise a power of sale does not invalidate the instrument or the ability of the mortgagee or beneficiary of the deed of trust to appoint an individual to exercise the power of sale.

(5) If a mortgage or deed of trust allows for the appointment or substitution of a trustee or an individual authorized to exercise a power of sale, the holder of the mortgage or deed of trust may make the appointments or substitutions from time to time.

(c) A sale made pursuant to this section, §§ 7–105.1 through 7–105.8 of this subtitle, or the Maryland Rules, after final ratification by the court and grant of the property to the purchaser on payment of the purchase money, has the same effect as if the sale and grant were made under decree between the proper parties in relation to the mortgage or deed of trust and in the usual course of the court, and operates to pass all the title which the borrower had in the property at the time of the recording of the mortgage or deed of trust.

R.P. § 7–105 (2010 Repl.Vol., 2011 Supp.).

An editor's note states that "Section 2, chs. 322 and 323, Acts 2010, provides that 'this Act shall be construed to apply retroactively and shall be applied to and interpreted to affect any mortgage or deed of trust on record or recorded on or after June 1, 2010.'"

Svrcek contends that, because the deed of trust named someone other than an individual as a trustee, it is void. He argues that, "[b]ecause Maryland law requires that the power of sale vest in a person capable of exercising it, the failure to designate such a person voids the power of sale." According to Svrcek, Maryland's Constitution does not permit the General Assembly to enact laws with retroactive application when the retroactive aspect is a special law or impairs any vested property rights. We are not persuaded.

There is no doubt that Maryland courts have long recognized the right of the legislature to enact curative statutes. In *Grove v. Todd*, 41 Md. 633 (1875), the Court of Appeals commented on curative statutes:

That the Legislature may, in proper cases, by retroactive legislation, cure or confirm conveyances, or other proceedings, defectively acknowledged or executed, we entertain no

doubt. As authority for the exercise of such power, we have long usage and many precedents. Such legislation is sustainable, because it is supposed not to operate on the deed or contract, by changing it, but upon the mode of proof only. *Grove,* 41 Md. at 641.

Similarly, in *Dryfoos v. Hostetter,* 268 Md. 396, 302 A.2d 28 (1973), the Court of Appeals wrote:

Curative acts have been enacted at virtually every session of the General Assembly commencing with Ch. 208 of the Laws of 1858. They have as their general purpose the validation of conveyances which might otherwise have been challenged because of some deficiency in form or content. Although curative acts may be broadly characterized as being retroactive or retrospective in their operation, they are generally sustained on the theory that whatever a sovereign power may authorize in prospect, it may adopt and validate in retrospect, so long as there is no interference with vested rights or contractual obligations.

*Dryfoos,* 268 Md. at 404, 302 A.2d 28.

In both *Grove* and *Dryfoos,* the court found that the legislature had overstepped its constitutional authority because application of the curative statute would have abrogated a vested right. In *Grove,* the court considered the validity of a deed purporting to convey a farm in Frederick County from Benjamin Todd and his wife Ruth to Benjamin H. Todd and Jesse Todd, the children of Jesse Todd, deceased, who was the illegitimate son of Benjamin Todd, the grantor. *Grove,* 41 Md. at 638. The deed indicated it was executed and acknowledged in Frederick County, before a justice of the peace of that county, when in fact, it was executed and acknowledged in Carroll County, before a justice of the peace of Frederick County. *Id.* Benjamin Todd, the grantor, died intestate, and his widow, Ruth, sought to have the deed declared a nullity and the assignment of her dower in the land attempted to be conveyed. *Id.* There was no dispute that the deed was wholly inoperative and void, as against Ruth, absent application of a legislative Act that, in effect, made valid the otherwise void acknowledgment. Application of the curative Act, however,

would operate to extinguish all right of dower in the land. The Court ruled that Ruth could only be divested of her dower by proper and legal acknowledgment, and a deed not so acknowledged was inoperative as to her.

Similarly, in *Dryfoos*, the Court of Appeals held that application of a curative statute would serve to subordinate two lienholders to a subsequent mortgagee in contravention of their rights. Maryland law required that a party secured by a purchase money deed of trust, if not the seller of the property, make an affidavit that the funds borrowed had been disbursed at the time the deed of trust was executed. *Dryfoos*, 268 Md. at 400, 302 A.2d 28. The subject deed of trust did not bear such an affidavit. *Id.* The Dryfooses argued that the absence of the affidavit of disbursement rendered one of the parties' trust invalid, and that application of a curative Act would unconstitutionally disturb rights which had become vested. *Id.* at 401, 302 A.2d 28. The curative Act provided that certain deeds of trust in which the affidavit of disbursement of loan was not in the prescribed form, or was inadvertently omitted, would be rendered valid.

The Court of Appeals determined that, under the facts of the case, application of the curative Act would be constitutionally impermissible because, to do so, would put one of the parties second in order of priority, subject to a senior encumbrance. The Court of Appeals wrote:

We willingly grant that the Legislature, having chosen to impose the requirement of an affidavit of disbursement, had the power to repeal the statute prospectively. What it could not do, however, once it had imposed the requirement, was to validate a deed of trust which was a nullity when made, to the prejudice of the Dryfooses and the Hostetters. To reach any other result would be tantamount to saying that the Legislature could take a property interest from one person and vest it in another, which cannot be done by statute.

*Id.* at 408, 302 A.2d 28.

In the instant case, Svrcek contends that the failure to name an individual as trustee rendered the entire instrument void,

even though R.P. § 7–105(a) does not state the result of a failure to comply with its terms. He also contends that application of the curative Act would disturb his vested rights in the subject property and violate due process. We disagree.

In *Dryfoos,* the Court of Appeals summarized the criteria against which the validity of a curative Act is tested:

As a general proposition, it is said that a jurisdictional defect in a judgment cannot be cured by retroactive legislation without denial of due process of law, while retroactive legislation designed to cure non-jurisdictional or modal defects is within the constitutional power of the legislature. The doctrine is based upon the sound principle that curative acts cannot cure want of authority to act at all, or validate or infuse life into utterly void proceedings without taking the property of one person and transferring it to another in violation of due process. The defect is not incurable unless the remedy violates due process. What constitutes a jurisdictional defect in terms of due process of law must necessarily be resolved by resort to the fundamental principles of due process itself, bearing in mind that the concept is indefinable by legalistic formulae, but is founded upon considerations of fundamental fairness.

In search of a ready test for determining the validity of a curative statute, the courts have established the rule that a legislature may validate by subsequent act anything it might have authorized previously or may make immaterial anything it might have omitted in the original act.

\* \* \*

Courts do not regard rights as constitutionally protected which are contrary to the equity and justice of the case. And when the intent of the curative act is to achieve a result which will be recognized in a court of equity, a greater presumption of validity attaches to it and should be liberally construed to effectuate the salutary purpose.

*Dryfoos,* 268 Md. at 405–06, 302 A.2d 28 (quoting *Goddard v. Frazier,* 156 F.2d 938, 941–42 (10th Cir.1946)(internal quotations and citations omitted)).

There is no basis for Svrcek's argument that allowing the appointment of a substitute trustee in any way abrogates his rights in the property. In executing the deed of trust, Svrcek agreed to the substitution of trustees and to the grant of a power of sale to a trustee. The Court of Appeals' decision in *Dollar Investment Co. of Md., Inc. v. Paton,* 236 Md. 94, 202 A.2d 646 (1964), supports our conclusion that the power of sale can be revived by the subsequent appointment of an individual as a substitute trustee. In *Dollar Investment,* the Court wrote:

> The receiver, who held the entire beneficial interest in the deeds of trust, filed his petition for the substitution of trustees to sell and we, therefore, hold that the chancellor had ample authority to make the substitution and the appellant's exceptions were properly overruled.

*Id.* at 97, 202 A.2d 646.

Svrcek voluntarily agreed to the potential substitution of trustees and the grant of the power of sale to a trustee when he signed the deed of trust. The legislation allowing a mortgagee to substitute an individual as a trustee to act on its behalf upon default by a mortgagor does not infringe upon any vested property right.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**